IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MELVIN ROBERTSON,** | ) |
| Plaintiff, | ) CASE NO.: 1:23-CV-891 |
| | ) |
| vs. | ) JUDGE PATRICIA A. GAUGHAN |
| | ) |
| **OFFICER ROBERT TAYLOR,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANT CITY OF CLEVELAND'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant City of Cleveland ("the City") hereby submits this Reply in Support of its Motion for Judgment on the Pleadings.

### INTRODUCTION

Plaintiff's response confirms that the parties agree on two important points. First, the City does not maintain an official policy that would give rise to the harm alleged in the First Amended Complaint (the "Complaint"). Second, the City does not have a custom of tolerance or acquiescence of federal rights violations. Plaintiff has correctly abandoned these theories of municipal liability. (ECF No. 62, PageID #495). The only question, then, is whether Plaintiff has stated a plausible claim under the two remaining theories: ratification and a failure to train or supervise. He has not, and his diligence in conceding particular issues does not shore up the deficiencies of the remaining portions of his case against the City.

## **LAW AND ARGUMENT**

I. **Plaintiff's Complaint Fails to State a Viable Claim against the City of Cleveland for Failure to Train or Supervise.**

To establish municipal liability based on a failure to train or supervise, a plaintiff must allege sufficient facts to show that: (1) the municipality's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019). Deliberate indifference "is a stringent standard of fault." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). A plaintiff must prove either (1) a pattern of similar constitutional violations that should have illustrated the need for better training or supervision, or (2) a single violation of federal rights coupled with "an obvious potential" that the violation was the result of a failure to train for recurring situations, which the City should have known the officer was likely to encounter. *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 562-63 (6th Cir. 2011).

The fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). "Municipalities are accountable for customs—not rogue officers—that violate Constitutional rights." *Leonhardt v. Strollo*, No. 1:15-CV-2507, 2016 WL 4705171, at *6 (N.D. Ohio Sept. 8, 2016); *Batton v. Sandusky Cnty.,* Ohio, No. 3:21-CV-1771, 2023 WL 375206, at *5 (N.D. Ohio Jan. 24, 2023) ("a municipality may not be held liable simply because it employs a tortfeasor; instead, it must be a government policy or custom that inflicts injury such that the municipal entity itself is responsible under § 1983"). Accordingly, Robertson must establish not only that the City itself was the wrongdoer in this case, but also that one of the City's policies or

2

customs was the "moving force of the constitutional violation." *Doe v. Claiborne Cty., Tenn. By and Through Claiborne Cty. Bd. of Ed.*, 103 F.3d 495, 507 (6th Cir. 1996); *Searcy v. City of Dayton,* 38 F.3d 282, 286 (1994), citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). Finally, the alleged policy or custom must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993), quoting *Monell* at 691.

### A. Plaintiff Does Not Allege a Pattern of Similar Constitutional Violations.

Robertson rests his failure to train claim on two prior incidents involving Officer Taylor:[1]

> 16. Fewer than two years into Defendant Taylor's career, in August 2002, he used deadly force for the first time as a police officer when he shot and killed 16-year-old Ricardo Mason.
>
> 17. In January 2013, Defendant Taylor used deadly force again when he followed an unidentified man into an abandoned building, got into a fight with him, and exchanged shots with the man.

(ECF No. 29, PageID #172). Robertson does not contend that both of these incidents were unconstitutional or unlawful, and he provides no basis for comparing them to the instant case. He simply mentions them in the Complaint and relies on the Court to infer a "pattern of similar constitutional violations." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011), citing *Bryan Cty.* at 410. The Court should not oblige him. Robertson cannot relitigate Ricardo Mason's claims against the City, and he cannot rely on a pair of disparate incidents throughout the course of Officer Taylor's career to support the notion that the City has a custom

---

[1] Both incidents predate the City's 2015 consent decree with the U.S. Department of Justice, entered in *United States v. City of Cleveland*, No. 1:15-cv-01046 (N.D. Ohio); for this reason alone, they should have no bearing on the City's use-of-force training or policies at the time of the underlying incident, which occurred in 2021.

3

or policy of ignoring "widespread abuse" by its officers. *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994). Allegations of prior misconduct by the defendant—whether substantiated or not—do not rise to the level of deliberate indifference on the part of a municipality. *Westbrook v. City of Cincinnati,* No. 1:21-CV-476, 2023 WL 2743768, at *3 (S.D. Ohio Mar. 31, 2023), citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("an allegation that two officers (in a large department) violated various unidentified departmental procedures over the course of their careers does not show 'a history of abuse' or put the City 'on notice that the training *in this particular area* was deficient'"); *Gomez v. Galman*, 18 F.4th 769, 779-780 (5th Cir. 2021) ("Gomez does plead facts regarding two instances of misconduct by Galman, but neither of those instances are similar enough to the conduct here to demonstrate that the attack on Gomez was a 'highly predictable' consequence of a failure to train"); *Est. of Hickman v. Moore*, 502 F. App'x 459, 469 (6th Cir. 2012) ("[a] handful of isolated excessive force complaints occurring several years before the relevant conduct do not establish a 'pattern or practice' of condoning such activity").

In *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-0589, 2010 WL 3619790, at *3 (M.D. Tenn. Sept. 13, 2010), the court dismissed a failure to train claim premised on prior misconduct by the defendant officer. While the complaint described how the officer had "shot and killed a young man" on at least one other occasion, it failed to make a showing of deliberate indifference:

> No facts are supplied in the Second Amended Complaint [...] concerning the circumstances of the prior shooting, and no factual link is drawn between the prior shooting, Metro's alleged failure to train, supervise, or discipline officer Shelton adequately, and the shooting of Wallace […] Metro cannot be held liable under *Monell* 'for the actions of a rogue official,' even if Officer Shelton could be characterized as such.

4

*Id.,* citing *Arnold v. Metro. Gov't of Nashville & Davidson Cnty.,* No. CIV 3:09CV0163, 2009 WL 2430822, at *3 (M.D. Tenn. Aug. 6, 2009).

Like the plaintiff in *Metro*, Robertson fails to draw any connection between the prior incidents and the instant case; he simply suggests that the City was on notice of its failure to train because Taylor had previously used his service weapon in the line of duty. While the Complaint creates the impression of a pattern by citing to *Green v. Taylor*, 239 F. App'x 952 (6th Cir. 2007), it omits the central facts of that case: Taylor fired twice at a vehicle involved in a high-speed pursuit to prevent it from running over his partner. *Id.* at 957. The Complaint provides even less detail about the 2013 incident, and Robertson does not intimate, much less expressly allege, that it was unconstitutional. The reason is clear: Taylor was attacked while investigating a break-in at an abandoned building. The assailant drew a revolver from his waistband and shot Taylor in his ballistics vest. Taylor returned fire, and the assailant fled the scene on foot. *See* January 22, 2013 Cleveland Plain Dealer article attached as Exhibit A.[2]

Even if Robertson could allege a failure to train by reference to the prior acts of an individual officer—and he cannot—he has failed to identify a pattern of constitutional violations by Robert Taylor or anyone else. This case is materially different from the two other incidents mentioned in the Complaint, and in one of those incidents, Taylor was the person who was shot. There is no constitutional violation where an officer fires at and misses a suspect who is using assaulting him. *Adams v. City of Auburn Hills*, 336 F.3d 515, (6th Cir. 2003), citing *Cameron v. City of Pontiac, Mich.*, 813 F.2d 782, 785 (6th Cir. 1987) ("This court has specifically held that

---

[2] The City's use of the article does not transform this motion for judgment on the pleadings into a motion for summary judgment. While the allegations in the complaint are the primary focus in assessing a motion under Fed. R. Civ. P. 12(c), "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir.2008), *quoting Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001). Robertson relies on the 2013 incident in his Complaint, and the facts contained in the article are a matter public record. The Court thus may consider those facts for the purpose of ruling on the pending motion.

5

shooting at a fleeing felon, but missing, is not a "seizure"); *Bell v. Cumberland Cnty.*, 665 F. App'x 421, 426 (6th Cir. 2016) (holding that an officer did not violate the Fourth or Fourteenth Amendments by shooting suspect who had pinned the officer to the floor and was attempting to strike him with a cast iron skillet). If the Court treats the Complaint's well-pleaded allegations as true, as it must, Robertson has still only identified one other facially dissimilar instance of potentially unconstitutional conduct from two decades prior. To infer deliberate indifference from such a threadbare "pattern" would defy the clear mandate of *Monell,* exposing the City to liability under *respondeat superior*. *Thomas v. City of Chattanooga,* 398 F.3d 426, 432 (6th Cir. 2005), citing *Monell* at 694 ("The danger in appellants' argument is that they are attempting to infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard ... [which] has been forbidden by the Supreme Court"); *Lopez v. Foerster*, No. 20-2258, 2022 WL 910575 at *8 (6th Cir. Mar. 29, 2022), citing *Meeks v. City of Detroit, Michigan*, 727 F. App'x 171, 181-82 (6th Cir. 2018) ("**one prior incident does not prove a 'pattern'**") (emphasis added); *Alphabet v. City of Cleveland*, No. 1:05CV1792, 2006 WL 3241785 (N.D. Ohio Nov. 7, 2006) (four complaints of unconstitutional conduct over the span of four years "can hardly be deemed a 'numerosity of incidents,' or a 'widespread extent of practices' that would render the risk of similar harm so obvious that the City should have known of it"); *Ondo v. City of Cleveland*, No. 1:12 CV 122, 2012 WL 3743754 (N.D. Ohio Aug. 27, 2012) (dismissing a *Monell* claim where plaintiffs attempted "to infer a City-wide policy based solely on one instance of potential misconduct"). Despite Robertson's efforts to contort the law, § 1983 does not impose liability on a municipality simply because it retained an officer involved in prior shootings. The failure to train claim fails because it alleges nothing more.

6

### B. Plaintiff Does Allege a Failure to Train Under the Single-Incident Theory of Liability.

By focusing on Taylor's past, Robertson concedes that this case does not fall into the "narrow range of circumstances" where a single incident will give rise to municipal liability for a failure to train. *Brown* at 398. He does not plead "a complete failure to train the [officers], training that is so reckless or grossly negligent that future…misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011), citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Instead, his Complaint consists of references to prior incidents coupled with barebones assertions of liability and other legal conclusions "devoid of factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). For example:

> 56. At all times material to this complaint the City of Cleveland Division of Police had interrelated *de facto* policies practices, and customs which included, among others:
>
> > a. The failure to properly hire, train, supervise, discipline, monitor, counsel, and/or otherwise control City of Cleveland officers who engage in unjustified use of excessive and unreasonable force, including unjustified shootings,
>
> […]
>
> > d. The failure to properly train and supervise City of Cleveland police officers with regard to discharging their weapons at civilians.
>
> […]
>
> 73. The *de facto* policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, and/or control misconduct and the code of silence are interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

(ECF No. 29, PageID #177 & #180). Apart from these boilerplate accusations, Robertson offers nothing to show that the City's training was so obviously deficient as to make misconduct inevitable.[3] He does not state whether the City's "failures" relate to the type of force Taylor used, when he used it, or why; and there is no effort to cast the City's training programs as the "moving force" behind the off-duty shooting. *Doe* at 507. "[P]olice lying" and a "code of silence" are framed as central issues, but no specific accusations of dishonesty are made, and no throughline is drawn to the instant case. *Sampson v. Cleveland*, No. 1:20-CV-741, 2020 WL 7238427 (N.D. Ohio Dec. 9, 2020), at *3 ("[t]erms such as "watch your back" and "code of silence," while popular in the vernacular, are insufficiently detailed to state a *Monell* claim against the City"); *Sailor v. City of Cleveland*, No. 1:20CV660, 2021 WL 4472113, *4 (N.D. Ohio Sept. 30, 2021) (allegations of a code of silence "must include sufficient facts to buttress the claim"). The response brief offers little clarification, making broad assurances that "facts" are in development without stating what they are. (ECF No. 62, PageID #495). A court is not required to conjure up unpleaded facts to save a complaint from dismissal under Rule 12. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The burden lies with the plaintiff to allege them. Since Robertson fails to plead a failure to train under any theory, the Court should dispose of his claim.

## II.     Plaintiff Lacks Any Ratification Claims Against the City.

The City also moves for judgment on the pleadings as to Robertson's ratification claim, as Robertson (1) fails to allege or prove any "pattern" of misconduct on the part of the City and (2) does not show that the City or its policymakers ratified unconstitutional conduct comparable to the incident at issue. Similar to a failure to train, the ratification theory of municipal liability requires a plaintiff to set forth enough facts to demonstrate a "policy" or "custom" of failing to investigate

---

[3] Put differently, Robertson has not shown how better training or supervision by the Cleveland Division of Police would have prevented an incident that occurred while Taylor was engaged in secondary employment.

8

unconstitutional behavior. *Pineda v. Hamilton Cnty.*, Ohio, 977 F.3d 483, 495 (6th Cir. 2020), citing *Burgess* at 478-79; *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) ("ratification requires more than acquiescence—it requires affirmative approval of a *particular decision made by a subordinate*"). In addition, the plaintiff must allege facts to show that the policy or custom was the "moving force" behind the constitutional violation. *Id.* at 656, n.3, quoting *Williams v. Ellington*, 936 F.2d 881, 885 (6th Cir. 1991). It is not sufficient to identify a "single failure" or even a few. *Pineda* at 495. "There must be multiple earlier investigations and they must concern comparable claims." *Stewart v. City of Memphis, Tennessee*, 788 F. App'x 341, 344-45 (6th Cir. 2019), citing *Leach v. Shelby Cnty. Sheriff,* 891 F.2d 1241, 1248 (6th Cir. 1989). In *Leach,* the Court found ratification where the plaintiff alleged a failure to investigate fourteen other instances of inmate abuse. *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 453 (6th Cir. 2020), citing *Leach* at 1247.

Robertson's complaint falls well short of this mark. Aside from the Internal Affairs investigation into his own case, he identifies one other investigation—from the 2002 incident involving Officer Taylor—as support for his ratification claim.[4] But an isolated decision by policy makers twenty years ago can hardly constitute the "moving force" behind an alleged constitutional deprivation that occurred in 2021, when Taylor was working for Giant Eagle, and Robertson does not plead otherwise. He draws no meaningful connection between the two cases and instead asks the Court to infer a City-wide policy of sanctioning off-duty use of force from an investigation into an incident that occurred while Taylor was on duty. *Monell* requires more. A plaintiff cannot establish municipal liability by vaguely alluding to the events of the past. There must be a clear pattern of comparable misconduct and, at minimum, a plausible statement of causation *tied to a*

---

[4] Robertson does not claim that the City failed to investigate this incident; rather, he disagrees with the outcome. (ECF No. 29, PageID #178).

*specific policy or custom.* Robertson's complaint fails to meet these requirements. *McPherson v. Cuyahoga Cnty.*, No. 1:20-CV-00639, 2021 WL 2841582, at *3 (N.D. Ohio July 8, 2021) (dismissing a ratification claim based on a failure to investigate two prior incidents of excessive force in a two-year period); *Evans v. Iceman*, No. 2:21-CV-05213, 2022 WL 2954226, at *3 (S.D. Ohio July 26, 2022) (conclusory assertions that certain "policies, practices, customs, and decisions" were the "moving force" behind a constitutional violation cannot support a ratification theory of liability); *Shepherd v. Sheldon*, No. 1:11 CV 127, 2011 WL 3608223, at *7 (N.D. Ohio Aug. 15, 2011) (plaintiff's assertion that officers were "immune from discipline, reprimand, and/or prosecution" for their actions without identifying "a particular custom and practice" does not satisfy the pleading standards set forth in *Twombly* and *Iqbal*).

**CONCLUSION**

Plaintiff has rightfully conceded two of the four theories of *Monell* liability. For the reasons stated above, and pursuant to Rule 12(c), the City requests this Court to grant judgment on the pleadings and dismiss Plaintiff's claims against the City in their entirety.

                        Respectfully submitted,

                        MARK D. GRIFFIN (0064141)
                        Director of Law

By:   */s/ Dylan Ford*
        William M. Menzalora (0061136)
        Chief Assistant Director of Law
        Michael J. Pike (0074063)
        Dylan Ford (0101464)
        Assistant Directors of Law
        City of Cleveland, Department of Law
        601 Lakeside Avenue, Room 106
        Cleveland, Ohio 44114-1077
        Tel: (216) 664-2800
        WMenzalora@clevelandohio.gov
        MPike@clevelandohio.gov
        DFord5@clevelandohio.gov
        *Attorneys for Defendant City of Cleveland*

## **CERTIFICATE OF SERVICE**

The undersigned certifies the above document was filed electronically this 15th day of December, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's filing system.

*/s/ Dylan Ford*
Dylan Ford (0101464)