# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **Melvin Robertson,** | ) | **CASE NO. 1:23 CV 891** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Officer Taylor, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## Introduction

This matter is before the Court upon Defendant City of Cleveland's Motion for Judgment on the Pleadings. (Doc. 51.) This case arises from an August 2021 incident whereby Plaintiff was shot and injured by Cleveland Police Officer Robert Taylor. For the following reasons, the City of Cleveland's motion is GRANTED.

## Facts

Plaintiff Melvin Robertson brings this lawsuit against Officer Robert Taylor, the City of Cleveland (the "City"), Giant Eagle, and Security Hut, Inc. In his First Amended Complaint (the "complaint"), Plaintiff alleges the following.[1]

In September 2000, the City hired Robert Taylor as a police officer. Prior to August 2, 2021, Security Hut hired Taylor to work secondary employment as a security guard, and Giant Eagle hired Taylor through Security Hut to work at its W. 117th St. location in Cleveland, Ohio. On August 2,

---

[1] Because the Court has considered the facts in the light most favorable to Plaintiff for purposes of this motion, the Court has not considered the facts set forth by Defendant.

2021, Taylor was working at the store dressed in a Cleveland Division of Police officer uniform and carrying a taser and his police-issued firearm.

It is alleged that on that day, Plaintiff was shopping at the store with his girlfriend when he encountered his cousin who was angry at him for a workplace incident the day earlier. Plaintiff's cousin tried to start an argument with Plaintiff inside the store, attracting the attention of store employees and Taylor. Plaintiff walked away and informed his girlfriend of the confrontation and that he was leaving the store. As Plaintiff was leaving, Taylor talked to Plaintiff's cousin who informed Taylor that Plaintiff had a gun.

It is further alleged that Taylor followed Plaintiff outside of the store to the parking lot and attempted to stop him without reasonable suspicion or probable cause that Plaintiff had committed a crime. Taylor unlawfully seized Plaintiff by putting his left hand on Plaintiff's arm and his right hand on his gun. Frightened and confused, Plaintiff ran away with his hands in the air and his back to Taylor. Taylor immediately took out his gun and fired at Plaintiff in the parking lot. The first shot missed, but caused Plaintiff to trip and fall. A gun and a cell phone fell out of the waistband of Plaintiff's pants. Plaintiff picked up his gun and continued running away from Taylor with the gun's barrel pointed at the ground. Taylor fired a second time, striking Plaintiff in the hip and causing lingering injuries.

According to the complaint, Taylor had previously used deadly force twice as a Cleveland police officer. First, in August 2002, he shot and killed 16-year-old Ricardo Mason. After an investigation, the Cleveland Division of Police Internal Affairs Unit found that Taylor's use of deadly force against Mason was justified. The City of Cleveland Police Chief agreed. A later § 1983 lawsuit against the City and Taylor settled prior to trial for $1 million after the Sixth Circuit held that a jury

could find that Taylor violated Mason's constitutional rights. Second, in January 2013, Taylor followed an unidentified man into an abandoned building, got into a fight with him, and the two exchanged gunshots. No other facts are alleged as to the 2013 incident.

The complaint sets forth seven claims for relief. Count One alleges a claim under 42 U.S.C. § 1983 against Taylor for unlawful seizure. Count Two alleges a claim under 42 U.S.C. § 1983 against Taylor for excessive force. Count Three alleges a *Monell* claim under 42 U.S.C. § 1983 against the City. Count Four alleges a state law claim against Taylor for negligence, willful, wanton, and/or reckless conduct. Count Five alleges negligence against Taylor and liability based on *respondeat superior* against Giant Eagle and Security Hut. Count Six alleges premises liability against Giant Eagle. Count Seven alleges negligent hiring, retention, and/or supervision against Giant Eagle and Security Hut. Counts Six and Seven against Giant Eagle were dismissed on October 10, 2023.

The City moves for judgment on the pleadings with respect to Count Three of the complaint, which is the only claim asserted against it. Plaintiff opposes the motion.

**Standard of Review**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion."*Mellentine v. Ameriquest Mortg. Co.,* 2013 WL 560515 (6th Cir. February 14, 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007).

Thus, "[w]e assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

4

**Discussion**[2]

    **1)** *Monell* **Claim**

"Municipalities are not subject to *respondeat superior* liability in § 1983 actions[.]" *Peroli v. Huber*, 2021 WL 5411215, at *10 (6th Cir. Nov. 19, 2021) (citations omitted). To prevail on a § 1983 claim against a municipality, a plaintiff must show that: (1) he or she suffered a deprivation of a constitutionally protected interest; and (2) the deprivation was caused by an official policy, custom, or usage of the municipality. *Hunt v. City of Toledo L. Dep't*, 881 F. Supp. 2d 854, 878 (N.D. Ohio 2012) (citing *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)).

To establish the second prong of the *Monell* claim, "[a] plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020). Moreover, a plaintiff must show a "direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Spencer v. Cleveland Clinic Found.*, 2022 WL 2954175, at *9 (N.D. Ohio July 26, 2022); *see also D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014) ("[A] municipality is liable under § 1983 only where, through its deliberate conduct, it was the 'moving force' behind the injury alleged.").

---

[2] Plaintiff argues the Court should deny the City's motion for judgment on the pleadings due to its timing. Rule 12(c) provides that a motion for judgment on the pleadings may be made "[a]fter the pleadings are closed – but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). Because the pleadings are closed and there will be no delay to trial, the Court will consider the City's motion.

For purposes of this motion only, the Court will assume a constitutional violation occurred. Plaintiff is pursuing a *Monell* claim against the City under the second and third theories of liability, namely ratification and failure to train.³ The Court will consider each theory in turn.

a. **Ratification**

*Monell* liability under a ratification theory "involves a showing of an illegal policy or custom by demonstrating that an official with final decision-making authority ratified illegal actions." *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 270 (S.D. Ohio 2021) (citing *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020)). "An official acting with the final decision-making authority may ratify the unconstitutional acts of its employees in two ways": (1) through "affirmative approval of a particular decision made by a subordinate," or (2) by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Id*. at 270–71 (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 650 (6th Cir. 1993) and *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020)).

Plaintiff argues that the complaint adequately pleads ratification based on the 2002 and 2013 incidents, his own 2021 shooting, and the fact that the City generally ratifies officers' excessive force. (Doc. 52 at 5 citing Am. Compl. ¶¶ 15–17, 54–78.) However, accepting all the allegations as true and construing them most favorably to Plaintiff, the complaint does not state a claim for ratification.

As to the 2002 incident, an investigation into the matter resulted in a determination that Taylor's actions were justified. Therefore, no excessive force was found and there was no illegal act to ratify. Plaintiff alleges that the action "was likely unconstitutional" because the Sixth Circuit held that a reasonable jury could have found excessive force. However, the matter was settled and the

---

³ In his opposition to the City's motion, Plaintiff abandoned the first and fourth *Monell* theories of liability.

Sixth Circuit did not make a finding of excessive force. Therefore, the City could not have ratified an illegal act. Additionally, 19 years lapsed between the 2002 shooting and Plaintiff's shooting.

As for the 2013 incident, Plaintiff alleges no facts as to whether Taylor was at fault. Therefore, Plaintiff does not allege any illegal act that the City could have ratified.

Plaintiff also refers to his own shooting, including allegations that Police Chief Williams was a final decision maker who ratified the investigation into Taylor's conduct and approved the recommendation to not discipline Taylor. (Compl. ¶¶ 64–71.) But this cannot form the basis for prior ratification of an illegal act because it would have occurred after Plaintiff's injuries and could not have caused them. *See Wright v. City of Euclid, Ohio*, 962 F.3d 852, 882 (6th Cir. 2020) ("Wright points us to Chief Meyer's lack of investigation and discipline in the other high-profile use-of-force cases involving Euclid police officers, but those instances occurred after Wright's encounter with Flagg and Williams and cannot show that Meyer's failure to investigate and punish the officers involved in those uses of force led in any way to Wright's injuries.").

Additionally, plaintiff alleges only generally that "City of Cleveland officers . . . engage in unjustified use of excessive and unreasonable force," that "excessive deadly force is allowed by Defendant City's policies, practices, and customs," and that Taylor's "unconstitutional actions . . . were part of a widespread municipal policy, practice, and custom[.]" (Compl. ¶¶ 56(a), 64, 74.) These conclusory allegations are insufficient to state a *Monell* claim based on ratification.

Here, absent material factual allegations that Office Taylor (or other officers) used excessive force in violation of the Fourth Amendment prior to Plaintiff's shooting, the City could not have ratified unconstitutional conduct. *See McPherson v. Cuyahoga Cnty.*, 2021 WL 2841582, at *10 (N.D. Ohio July 8, 2021) ("Plaintiff's allegations of two prior incidents involving the use of pepper

7

spray fail to establish a policy by ratification because Plaintiff does not provide any factual detail to permit an inference that the earlier events amounted to excessive force.").

For these reasons, Plaintiff fails to allege a *Monell* claim based on ratification.

### b. Failure to Train

"In order to show that a municipality is liable for [] fail[ing] to train its employees, a plaintiff must establish that: (1) the City's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the City's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (citations omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Bryan Cnty.*, 520 U.S. at 410) (alterations omitted).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (2011) (citing *Bryan Cnty.*, 520 U.S. at 409). *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("A failure-to-train claim . . . requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." (citations and alterations omitted)). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Connick*, 563 U.S. at 62 (citation omitted). "Without notice that a course of training is deficient in a

particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

Plaintiff attempts to ground his failure-to-train claim on an alleged pattern of similar constitutional violations. (Compl. ¶¶ 16–17, 58, 63). As explained above, while Plaintiff generally alleges that Taylor used deadly force on multiple occasions throughout his career, Plaintiff specifically identifies only the 2002 shooting of Ricardo Mason and Taylor's 2013 exchange of gunfire in an abandoned building.[4] However, as discussed above, the allegations do not support a finding of an unconstitutional illegal act. In neither instance does Plaintiff include sufficient factual allegations for the Court to infer a pattern of similar constitutional violations. Moreover, Plaintiff relies on unsupported allegations of the City's failure to train its officers. (Compl. ¶¶ 56(a), 56(d), 73, 77.) Here, Plaintiff has not set forth *any* facts of prior instances of similar misconduct so as to show that the City was on notice that its training and supervision with respect to the use of force was deficient. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Thus, Plaintiff does not allege a pattern that would support a *Monell* claim based on a failure-to-train theory.

Likewise, Plaintiff does not prevail under a single incident theory whereby "a plaintiff must allege a complete failure to train the officers, training that is so reckless or grossly negligent that future misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Campbell v. Hamilton Cnty.*, 2023 WL 6295803, at *9 (S.D. Ohio Sept. 27, 2023) (citations

---

[4] Moreover, it is unlikely that two incidents occurring over a decade apart are sufficient to create a pattern for purposes of a *Monell* claim. *See Alphabet v. City of Cleveland*, 2006 WL 3241785, at *15 (N.D. Ohio Nov. 7, 2006) (finding that "four complaints of unconstitutional conduct by different officers over the span of four years can hardly be deemed a 'numerosity of incidents,' or a 'widespread extent of practices' that would render the risk of similar harm so obvious that the City should have known of it."). Additionally, the City points out that both incidents predate the City's 2015 consent decree with the U.S. Department of Justice and, therefore, could not have been relevant to the City's use-of-force training or policies at the time of the herein incident.

and alterations omitted); *see also Connick*, 563 U.S. at at 71 (requiring a plaintiff to show that "absent additional specified training, it was 'highly predictable'" that additional violations would result). The conclusory allegations in the complaint (Compl. ¶¶ 56, 73–78) are factually deficient and cannot support a *Monell* claim based on the City's training programs as the "moving force" behind Taylor's shooting of Plaintiff.

Nor is Plaintiff's allegation that the City's failure-to-train "was also done with deliberate indifference" sufficient. *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 500 (W.D. Ky. 2021) (explaining similar "conclusory allegation fails to identify either 1) prior instances of unconstitutional conduct that put the government on notice, or 2) a single violation stemming from an obvious potential for recurrence") (citing *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012) and *Connick*, 563 U.S. at 61–68); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012) (explaining in the context of a failure to train claim, "[t]he Court declines to accept as true formulaic recitations of the elements of a cause of action and supporting conclusory statements" and granting motion to dismiss).

Additionally, Plaintiff does not establish deliberate indifference through allegations of "a complete failure to train the officers, training that is so reckless or grossly negligent that future misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Campbell*, 2023 WL 6295803, at *9. Here, the complaint "must indicate a risk of a constitutional violation arising as a result of the inadequate training that is plainly obvious." *Sistrunk*, 545 F. Supp. 3d at 500 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). Plaintiff's allegations do not meet this standard.

Moreover, Plaintiff does not allege "a single fact related to the training the City provides its police officers, any prior incidents involving comparable uses of force by local law enforcement, or anything else that would plausibly suggest that the city maintained a policy or custom that contributed to the alleged deprivations" of his rights. *Westbrook v. City of Cincinnati*, 2023 WL 2743768, at *3 (S.D. Ohio Mar. 31, 2023) (finding allegations that officers "have been the subject of numerous investigations including allegations of excessive force, wrongful arrests, stealing money from citizens and other violations of law and police procedure" insufficient) (citing *Boddy v. City of Memphis*, 2022 WL 12258977, at *3 (6th Cir. Oct. 21, 2022).

Because the complaint lacks sufficient allegations to state a *Monell* claim against the City under either a failure to train or ratification theory, dismissal is appropriate.

### 2) Qualified Immunity

Having determined that Plaintiff fails to adequately allege a *Monell claim* against the City, the Court need not reach the City's qualified immunity argument.

### **Conclusion**

For the foregoing reasons, Defendant City of Cleveland's Motion for Judgment on the Pleadings with respect to Count Three is GRANTED.

IT IS SO ORDERED.

Dated: 2/8/24

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

11