**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Melvin Robertson, | ) | CASE NO. 1:23 CV 891 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Officer Robert Taylor, et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon Defendant/Third-Party Plaintiff Giant Eagle, Inc.'s Motion for Partial Summary Judgment. (Doc. 106). This case arises from an August 2021 incident whereby plaintiff was shot and injured in a Giant Eagle parking lot by defendant Robert Taylor who was working as a security guard. The issue here is whether Security Hut has a duty to defend Giant Eagle in connection with this lawsuit. For the following reasons, Giant Eagle's motion is GRANTED.

**Facts**

Plaintiff Melvin Robertson filed his Complaint on May 1, 2023, against defendants

1

Officer Robert Taylor, the City of Cleveland, and Giant Eagle, Inc. Briefly, the Complaint alleges the following. In September 2000, the City of Cleveland hired Robert Taylor as a police officer. Prior to August 2, 2021, Giant Eagle hired Taylor to work secondary employment as a security guard. On August 2, 2021, Taylor, off-duty from his job as a Cleveland police officer, was working as a security guard at Giant Eagle's store on W. 117th Street in Cleveland, Ohio. On that day, plaintiff was shopping at the Giant Eagle store when he engaged in an angry interaction with his cousin, attracting the attention of store employees and Taylor. Taylor was informed that plaintiff had a gun. Taylor followed plaintiff outside of the store and ultimately fired his gun at plaintiff, striking him and causing injuries.

On July 17, 2023, defendant Giant Eagle filed a Third-Party Complaint against Security Hut, Inc. The Third-Party Complaint alleges that Taylor is not an employee or agent of Giant Eagle but an employee and/or agent of Security Hut which hires security guards and police officers and assigns them to provide security services at retail establishments. Security Hut hired, trained, supervised, and paid Taylor. Security Hut assigned Taylor to provide security services at Giant Eagle at the time of the incident described above. A Store Security Services Agreement ("Security Agreement") between Security Hut and Giant Eagle provides that Taylor is an employee and/or agent of Security Hut, and that Security Hut is responsible for hiring, training, paying, supervising, and disciplining him. The Security Agreement provides that Security Hut must fully indemnify, defend, and hold Giant Eagle harmless for all claims and expenses (including reasonable attorneys' fees) caused by Taylor's provision of security services to Giant Eagle. The Security Agreement, which is governed by Pennsylvania law (¶ 11), states:

> **8. Indemnification**
>
>> 8.1. [Security Hut] agrees to defend, indemnify and hold Giant Eagle harmless against all claims for damages, losses, liabilities and deficiencies including, but not limited to, reasonable attorney's fees and other costs and expenses incident to any suit, investigation, claim or proceeding, which are suffered, sustained, incurred or required to be paid by Giant Eagle and are caused by …. (ii) any material breach or default with respect to [Security Hut's] performance of any covenants or obligations under this Agreement, (iii) any claims or actions brought by third parties based upon the conduct of the employees of [Security Hut] in providing the Security Services …

(Third Party Complaint Ex. 1). It is further alleged that plaintiff's Complaint asserts claims that fall squarely within the indemnification provision of the Security Agreement. Thus, Security Hut is obligated to defend Giant Eagle (including by reimbursing Giant Eagle's reasonable attorneys' fees incurred to date and paying such fees going forward), and to indemnify and hold Giant Eagle harmless to the extent Giant Eagle incurs any liability, damage, or loss in this lawsuit. By letter of May 12, 2023, Giant Eagle provided notice of this Complaint to Security Hut and made a demand for a defense and indemnification under the Security Agreement. Security Hut did not respond to the demand letter. The Third-Party Complaint sets forth four claims: Contractual Indemnification (Count One), Equitable Indemnification (Count Two), Contribution (Count Three), and Breach of Contract (Count Four).

A First Amended Complaint was filed on July 31, 2023, adding Security Hut, Inc. as a defendant. It alleges that prior to August 2, 2021, Security Hut hired Taylor to work secondary employment as a security guard, and Giant Eagle hired Taylor through Security Hut to work security at its W. 117th St. location in Cleveland, Ohio. On August 2, 2021, Taylor, off-duty

3

from his job as a Cleveland police officer, was working his Security Hut job as a security guard at Giant Eagle's store on W. 117th Street when he shot and injured plaintiff.

In a declaration submitted in support of a motion to set aside default entries, Security Hut's principal Jessica Vekas,, states that she filed a claim with Security Hut's insurance carrier, Philadelphia Indemnity Insurance Company ("PIIC"), after she received the May 2023 demand letter referencing this lawsuit. As of the date of the November 13, 2023 declaration, she had not received any response from the insurance carrier. (Jessica Vekas decl. Doc. 61). Vekas also testified at deposition that within two to three days of receiving the demand letter, she mailed a copy of the letter to the insurance carrier but never received a response. (Doc. 90 at 103-104).

On June 13, 2024, Giant Eagle and Security Hut filed Joint Stipulations of Fact which had been executed by them in February 2024. (Doc. 90 Ex. 4). In part, it was stipulated that they were parties to a Store Security Services Agreement (the Security Agreement) whereby Security Hut provided Security Services at select Giant Eagle locations, including the one at issue here. The Security Agreement was in effect at the time of the incident herein. Defendant Taylor was a Security Hut employee, and not an employee or agent of Giant Eagle. Security Hut was solely responsible for hiring, training, and then assigning the security guards and police officers to provide the Security Services. Security Hut was responsible for the background checks and represented to Giant Eagle that Taylor was fully qualified to provide the Security Services. Security Hut caused Giant Eagle to be listed as an additional insured under Security Hut's insurance policies.

Jeremy Darling, Assistant General Counsel at Giant Eagle, submits his declaration

4

with the herein motion. He states that on May 12, 2023, he sent notice to Security Hut exercising Giant Eagle's rights under the Store Security Services Agreement to a defense. Security Hut did not respond. Outside counsel was engaged to represent Giant Eagle in this lawsuit. (Darling decl.)

Nicholas Castellano, Senior Claims Examiner for PIIC, Security Hut's liability insurer, also submits his declaration. He states that Giant Eagle tendered defense and indemnity of this lawsuit to PIIC on January 9, 2024. In a letter dated January 31, 2024, Castellano advised Giant Eagle that PIIC agreed to defend it under reservation of rights. Citing a conflict of interest, Giant Eagle refused to accept the defense from PIIC because it was using the same counsel used for Security Hut. PIIC quickly agreed to defend Giant Eagle, under reservation of rights, using another attorney with no involvement in the case at that time. Giant Eagle refused to accept any defense from PIIC using this attorney. Giant Eagle commenced an arbitration against PIIC on May 17, 2024, to determine whether PIIC owed Giant Eagle any defense or indemnity with respect to this lawsuit. The arbitration is currently pending. Giant Eagle also commenced a bad faith lawsuit against PIIC in Pennsylvania in June 2024 on the same basis which is also pending. (Castellano decl.)

On September 20, 2024, the parties notified the Court that they had reached a tentative settlement as to all plaintiff's claims as against all defendants. The Third-Party Complaint filed by Giant Eagle against Security Hut remained pending,

This matter is now before the Court upon Defendant/Third-Party Plaintiff Giant Eagle, Inc.'s Motion for Partial Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Giant Eagle is seeking its defense costs in connection with this lawsuit under § 8.1 (Indemnification) of the Security Agreement. The defense costs include reimbursement of reasonable attorneys' fees and other costs that Giant Eagle has incurred thus far and will incur going forward. Giant Eagle seeks partial summary judgment as to Count One and Count Four, and in addition, or in the alternative, as to Count Two.

Count One alleges Contractual Indemnification. Giant Eagle maintains that Security Hut is contractually obligated to defend it by reimbursing the reasonable attorneys' fees and other costs that Giant Eagle has incurred incident to these proceedings (with interest) and paying such amounts going forward, and that this obligation includes reimbursing the reasonable fees and costs incurred by Giant Eagle in defending against plaintiff's claims as well as pursuing the Third-Party Complaint against Security Hut.

Pennsylvania law applies to the interpretation and application of the Security Agreement. (Security Agreement § 11.1) Under Pennsylvania law, "The obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy." *GE Aquarium, Inc. v. Harleysville Mut. Ins. Co.,* 2004 WL 3051074,

7

at *1 (Pa. Com. Pl. Dec. 27, 2004)(quoting *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 636 A.2d 649, 651 (Pa.Super.1994). An insurer's duty to defend is triggered by the factual averments contained in the underlying complaint. *Country Pools & Spas, Inc. v. Erie Ins. Exch.*, 315 A.3d 110 (Pa. Super. Ct. 2024) (citations omitted). The "insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover. The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." *Gen. Acc. Ins. Co. of Am. v. Allen*, 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997) (citations omitted).

Giant Eagle contends that the Complaint triggers Security Hut's obligation to defend Giant Eagle under § 8.1 of the Security Agreement on the following bases: it is a claim or action brought by a third party; it is based upon the conduct of Officer Taylor, a Security Hut employee, while he was allegedly providing security services at the store; Giant Eagle has incurred losses in the form of reasonable attorneys' fees and costs (including fees and costs associated with the pursuit of its Third-Party Complaint) that are caused by the claim or action filed by plaintiff; and all the legal fees and other costs incurred by Giant Eagle are incident to these proceedings, i.e., they have been incurred as a consequence of the underlying suit.

Accordingly, Giant Eagle asserts that Security Hut's duty to defend requires it to reimburse the reasonable attorneys' fees and expenses that Giant Eagle has incurred (and will continue to incur) in defending itself in this case, and the reimbursement obligation includes reasonable attorneys' fees and expenses incurred both in responding to the claims as well as in pursuing the Third-Party Complaint.

Count Four alleges Breach of Contract. Breach of contract under Pennsylvania law

8

requires a showing of (1) the existence of a contract (2) a breach of a duty imposed by the contract; and (3) damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).

Giant Eagle maintains that the elements of breach of contract are met in that the Security Agreement was a valid contract between Giant Eagle and Security Hut that was in effect at the time of the incident; the Security Agreement imposed a duty on Security Hut to reimburse reasonable attorneys' fees and costs incurred by Giant Eagle incident to these proceedings; and Giant Eagle timely invoked its defense rights and demanded reimbursement but Security Hut failed to respond and then denied its obligations in its Answer. Security Hut's failure to reimburse the reasonable attorneys' fees and costs has resulted in damages.

Giant Eagle asserts that under § 8.1(iii) of the Security Agreement (above), the reasonable attorneys' fees and costs incurred in defending plaintiff's claim, as well as those incurred in pursuing the Third-Party Complaint, are subject to reimbursement and payment. The latter became necessary when Security Hut failed to respond and accept its obligation after Giant Eagle invoked its rights under the Security Agreement. Additionally, Giant Eagle contends that it has a right to reimbursement and payment of its reasonable attorneys' fees and costs in pursing the Third-Party Complaint under § 8.1(ii) because those fees and costs were and continue to be "caused by … (ii) [a] material breach or default with respect to [Security Hut's] performance of any covenants or obligations under th[e] [Security Agreement]."

Count Two alleges Equitable Indemnification. In the alternative, and/or to the extent the Court's judgment on Counts One and/or Four does not afford it full relief, Giant Eagle seeks partial summary judgment in its favor on Count Two for equitable indemnification.

9

Giant Eagle maintains that it is entitled to equitable indemnity under Pennsylvania law.

Security Hut argues that issues of fact preclude summary judgment. This Court does not agree. Initially, the Court notes that Security Hut does not dispute that the Security Agreement was in effect at the time of the incident, that the claims asserted against Giant Eagle fall within § 8.1, that Giant Eagle timely sent the demand notice to Security Hut, and Giant Eagle incurred legal fees which have not been reimbursed. Nor does Security Hut dispute that the scope of its liability includes reimbursement of the reasonable attorneys' fees associated with the claims as well as the Third-Party Complaint. Moreover, Security Hut's arguments are unavailing and do not defeat summary judgment.

First, Security Hut maintains that Giant Eagle definitively rejected the defense offered by Security Hut's insurance carrier. Security Hut states that its liability carrier PIIC responded in writing on January 31, 2024, to Giant Eagle's request to defend it and agreed to indemnify and defend but Giant Eagle twice rejected such and commenced arbitration and a lawsuit against PIIC instead.

Security Hut essentially ignores that Giant Eagle moves for partial summary judgment under § 8 (Indemnification) of the Security Agreement. Instead, Security Hut treats the motion as one under § 9 (Insurance) of the Security Agreement. In fact, Security Hut's declarant Nicholas Castellano references § 9.2 of the Security Agreement and states that it is this provision "under which Giant Eagle seeks defense and indemnity ..." (Castellano decl. ¶ 7). This is not so. §§ 8 and 9 are two separate and different forms of protection for Giant Eagle under the Security Agreement. § 8 Indemnification provides at § 8.1 that Security Hut "agrees to defend, indemnify and hold Giant Eagle harmless against all claims for damages... " § 9.1

of the Security Agreement provides that Security Hut must maintain insurance coverage and § 9.2 states that "Giant Eagle must be named as an additional insured."

Giant Eagle did not move for summary judgment under § 9.2 and PIIC is not a party to the lawsuit. Regardless, Security Hut ignores § 9.3 of the Security Agreement which states:

> **9.3.** The obligations of [Security Hut] to obtain and maintain the foregoing insurance coverage in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Giant Eagle, nor shall the performance by [Security Hut] of that obligation relieve it from the liability under the Indemnity provisions set forth above in this Agreement.

Thus, the provisions of the parties' agreement expressly state that Security Hut is not relieved from liability for its own defense/indemnity obligations by its obtaining insurance and maintaining Giant Eagle as an additional insured. In fact, Giant Eagle recognized § 9.3 in a footnote in its motion and asserted that Security Hut could not avoid its obligations on this basis. Security Hut fails to acknowledge this provision. For these reasons, the Court agrees with Giant Eagle that the alleged dispute between it and PIIC about additional insurance coverage is not material to Security Hut's liability under § 8.1.

Second, Security Hut contends that Giant Eagle failed to mitigate its damages by rejecting the acceptance to indemnify and defend. In rejecting PIIC's offer of defense, Giant Eagle continued to incur damages in the form of attorneys' fees and costs. Moreover, Security Hut asserts that Giant Eagle was an "additional insured" on Security Hut's liability policy and PIIC had handled previous lawsuits involving actions taken by Security Hut personnel while working at Giant Eagle, including one in this Court. As such, Giant Eagle had actual knowledge that PIIC was Security Hut's insurer at the time of this incident and that it had

11

been previously defended and/or indemnified by PIIC. Security Hut maintains that had Giant Eagle promptly tendered defense of this matter to PIIC when this lawsuit was filed, Giant Eagle would not have incurred the significant defense costs associated with the Third-Party Complaint.

The Security Agreement does not impose an obligation on Giant Eagle with respect to insurance and § 9.3 provides that Security Hut is still obligated under the indemnity provisions even though it obtained and maintained insurance coverage. Therefore, there is no requirement that Giant Eagle accept the defense by PIIC or risk losing its rights under § 8.1.

Third, Security Hut contends that issues of fact exist as to whether the fees incurred in pursuing the Third-Party Complaint were objectively reasonable given that the Joint Stipulations of Fact executed by these parties on February 21, 2024, state that Security Hut agreed to defend, indemnify, and hold harmless Giant Eagle against any claims brought by third parties based upon the conduct of Security Hut's employees in providing security services to Giant Eagle. Consequently, Giant Eagle did not have to file the Third-Party Complaint to protect its interests because they were already secured. Nor did Giant Eagle need to file the Third-Party Complaint to protects its indemnification rights because the indemnification claim would not have become ripe until there was an award of damages. Security Hut also asserts that under Ohio law, Giant Eagle could not avoid vicarious liability for Taylor's actions and, therefore, expenditures incurred in connection with prosecuting its Third-Party Complaint to avoid vicarious liability were both unreasonable and unnecessary.

The Joint Stipulations of Fact do not include a statement that Security Hut agreed to defend and indemnify. (Doc. 90 Ex. 4). Moreover Giant Eagle submits the declaration of

Daniel Stuart, its outside counsel, who states he proposed including the language in the stipulations: "Security Hut is obligated to defend, indemnify, and hold Giant Eagle harmless to the fullest extent of Section 8.1 of the Security Agreement and common law in connection with the Incident alleged in the Complaint and the resulting lawsuit." But, Security Hut's counsel "redlined" that provision because he considered it a legal conclusion. (Daniel Stuart decl., Exs. A, B, and C). Thus, it was never a part of the Joint Stipulations of Fact even though Giant Eagle proposed that it be included. Notwithstanding, Security Hut's defense obligation arose in May 2023 when the lawsuit was filed and the Third-Party Complaint was filed in July 2023. The Joint Stipulations of Fact were not executed until February 2024 and, therefore, Giant Eagle could not have acted unreasonably in 2023 based on something that occurred later.

Finally, Giant Eagle's claims against Security Hut are not governed by Ohio law and Security Hut provides no authority for its argument that Giant Eagle would be precluded from pursuing its defense costs.

Fourth, Security Hut asks that the Third-Party Complaint and the herein motion be held in abeyance pending the outcome of the arbitration and bad faith lawsuit filed against PIIC in Pennsylvania. The Court declines to do so. Such a delay to the resolution of claims which have been pending since July 2023 would be prejudicial to Giant Eagle.

**Conclusion**

For the foregoing reasons, Defendant/Third-Party Plaintiff Giant Eagle, Inc.'s Motion for Partial Summary Judgment is granted.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/24/24